UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | | |
|---|---|---|
| C. MINOT DOLE,<br><br>Plaintiff,<br><br>v.<br><br>WILLIAM ADAMS,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 1:12-cv-00024-jgm |

DECISION AND ORDER
ON THE MERITS OF PLAINTIFF'S COMPLAINT
(Doc. 2)

## I. Introduction

Plaintiff C. Minot Dole commenced this diversity action in February 2012. He alleges Defendant William Adams committed fraud causing Plaintiff losses exceeding $4,000,000. See generally Doc. 2 (Am. Compl., hereinafter, "Compl.").[1] The Court held a three-day bench trial from September 22 through 24, 2015.[2] See Docs. 110-12 (Trial Trs.). The parties presented testimony and introduced exhibits. Both parties filed post-trial memoranda. (Docs. 113, 117, 118.) The Court has carefully considered the trial testimony and arguments, evidence presented, and the parties' post-hearing submissions, and, for the reasons stated below, determines Plaintiff has failed to sustain his burden of proof to show that William Adams committed fraud.

[1] Dole also alleged a claim under the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, §§ 2451-2480g, that the Court previously dismissed. See Docs. 79, 90.

[2] Also pending before the Court are Adams' motion for judgment on partial findings, made orally at trial and filed September 24, 2015 (Doc. 104), and Dole's motion to continue his objection to testimony and admission of exhibits related to mitigation of damages filed October 30, 2015 (Doc. 116), also raised orally during trial. Neither party filed written oppositions.

II. Facts

On September 22 through 24, the Court held a bench trial on Dole's remaining common-law fraud claim. Plaintiff's case consisted of the testimony of six witnesses, including, inter alia, himself and Defendant Adams and two experts, and exhibits entered into evidence. (Doc. 109.) Defendant orally moved for judgment on partial findings under Federal Rule of Civil Procedure 52(c) and later filed a written motion. See Dkt. Entry No. 106; Doc. 104. The Court took Adams' motion under advisement and it remains pending. (Doc. 104.) Defendant's case consisted of his own testimony and exhibits entered into evidence. Based on the trial testimony and evidence presented, the Court finds the following facts.

C. Minot Dole is a resident of Shelburne, Vermont. He retired in 1995 after approximately forty years as owner and CEO of Dole Associates, a product design and development company. Dole sought a "like-kind exchange" for an office building in New York state he had owned since 1979 as sole member of 23 Parkway, LLC. He testified the income from the building was his sole retirement income, he did not want to manage it himself, and he wished to avoid paying capital gains tax on the sale. Trial Tr. vol. 2 (Doc. 111) 8:12-12:5 (Sept. 23, 2015). In 2008-2009, Dole's broker, Larry Miller, sent him many options for investments that would qualify for a like-kind exchange, including one provided by DIS Partners. Id. 16:22-17:8. Miller informed him that DIS Partners, LLC specialized in the acquisition, sale, and management of Texas residential rental properties, and sent him a copy of DIS Partners' Confidential Private Placement Memorandum, known as PPM-II. Pl.'s Ex. 302. DIS Partners offered the opportunity to invest under PPM-II--exclusively through licensed broker dealers--beginning in May 2008. Id.

The PPM-II investment offered fee simple ownership in Texas single-family and multi-unit residential properties, coupled with a lease-back agreement, called a Master Lease Agreement ("MLA"). Pl.'s Ex. 302 at 4-6. The investment was likely eligible for a like-kind exchange, id.

at Ex. C, allowing investors to defer paying federal income tax on the sale of business property. PPM-II outlined a 7% rent paid on a monthly basis, beginning sixty days after the first full month of operations, supported by a letter of credit from a bank equal to one year's rent. Pl.'s Ex. 302 at 20. In January 2009, DIS Partners issued a Second Supplement to PPM-II that revised the proposed MLA to offer a second investment option. The option required investors to purchase properties with a 50% loan-to-value ratio, and required DIS Partners to pay 10% rent for the first five years, with the entire first year's rent due at closing. Pl.'s Ex. 317. It also eliminated the letter of credit. Id.

Miller gave Adams, a Managing Partner and Executive Vice President of Marketing and Product Development of DIS Partners, permission to speak directly with Dole. Adams sent Dole a letter by email on August 29, 2008, answering a list of questions. Pl.'s Ex. 3. Adams also sent Dole an email on September 2, describing DIS Partners' investment plan as "brilliant" and urging Dole to travel to Texas to view properties as soon as possible. Pl.'s Ex. 5. Dole requested a meeting in person with Adams but delayed a trip to Texas until he had a buyer for his New York property.

On March 19-20, 2009, Dole traveled to Houston, Texas to view current DIS Partners' properties and to San Diego, California to meet with Adams. They discussed the terms of the PPM-II investment. Dole testified Adams told him a letter of credit and the appreciated value of the properties would protect his investment. Trial Tr. vol. 2, 37:4-12. On March 27, Dole signed a Subscription Agreement listing an investment amount of $1,000,000 from the anticipated sale of his New York office building and certifying he had a net worth in excess of $1,000,000, had read and understood the PPM risk factors, and was not relying on outside information in making his investment. Def.'s Ex. O. Miller also signed the Agreement certifying his client Dole was an "accredited investor" with a net worth and income sufficient to sustain the risks, including loss of

investment and lack of liquidity, and the offering of DIS Partners was a suitable investment for Dole. Id.

In May 2009, Dole sold his New York property, triggering a forty-five day window to "identify [his] replacement property" for the like-kind exchange. Compl. ¶ 10. On May 18, 2009, Jennifer Brandt, a DIS Partners employee, sent Dole a letter including sales contracts for 15 of 17 units DIS Partners selected to sell to Dole and identifying the remaining two properties. Pl.'s Ex. 35. She enclosed the first few pages of the appraisals of the 15 properties that included photos and appraised values and noted the appraisals were not complete on the other two properties. Id. Dole reviewed the letter and enclosed documents and emailed Adams on May 21 and 22, questioning the inclusion of four "tiny houses" because they "seemed out of line" with the other properties and the homes he inspected in March. Pl.'s Exs. 37-38. Adams replied by email on May 25, explaining the rent-to-value ratio on the homes was higher than other properties. Pl.'s Ex. 39. Dole responded on June 8, asking Adams to "assuage some of the anxiety [he was] feeling." Pl.'s Ex. 45. The next day, Adams wrote Dole's anxiety was noted and offered to personally accompany Dole in the fall to view each house and exchange any Dole felt was substandard. Pl.'s Ex. 46.

On June 17, 2009, Dole purchased the replacement property selected for him by DIS Partners consisting of sixteen properties. At the closing, attended by Dole and a DIS Partners employee, Dole signed a promissory note to Texas Capital Bank and two Master Lease Agreements--already signed by DIS Partners' CEO Jacob Carroll[3]--one in the name of 23 Parkway, LLC and the other as Trustee of the Charles M. Dole Living Trust. Pl.'s Exs. 501-02. The MLA obligated DIS Partners to manage the properties and pay the associated bills, including the mortgages. See id. The first

[3] Carroll is named as a defendant in the complaint but was dismissed from this action without prejudice on January 9, 2014, at Dole's request, following Carroll's filing for bankruptcy. See Doc. 27; Dkt. Entry No. 36 (Jan. 9, 2014).

page of the MLA stated DIS Partners, as tenant, "shall pay" Dole, as landlord, 10% interest on his investment, with the first year's payment due in full at closing, and "there is no letter of credit for this option." Id. Exhibit A to the MLAs listed the sale price and mortgage amount for each property, including the Lockwood and Lavender properties for which Dole had not received appraisal information. Id. at Ex. A; Trial Tr. vol. 2, 57:11-22. Mr. Miller was paid approximately $100,000 as commission for his work on the transaction. Trial Tr. vol. 2, 123:4-6; Trial. Tr. vol. 3 (Doc. 112) 13:17-19; 14:14-15 (Sept. 24, 2015).

On July 7, 2009, Dole accepted a promissory note ("Note 1") from DIS Partners, signed by Jacob Carroll as CEO, loaning DIS Partners $99,070.78--the first year's rent that had been due at closing under the MLA--for one year at 12% interest. Pl.'s Ex. 503. The note was paid in full on March 4, 2011. Def.'s Ex. A-20; Trial Tr. vol. 2, 145:15-25. On August 3, Dole accepted a promissory note ("Note 2") from DIS Partners, signed by Jacob Carroll as CEO, loaning DIS Partners $100,000 for one year at 12% interest, to be paid in twelve monthly interest payments of $1,000 and a lump sum repayment of principal in a year. Pl.'s Ex. 504. Note 2 included a representation of DIS Partners' solvency. Id. at 2. Adams did not discuss DIS Partners' solvency with Dole. Trial Tr. vol 3, 165:21-23 (Adams testimony); see also Trial Tr. vol. 2, 122:25-123:3 (Dole testimony). DIS Partners made some interest payments on Note 2 but the principal was never repaid. Def.'s Ex. A-20; Trial Tr. vol. 2, 68:23-69:1.

Adams had communicated with Dole on three occasions between the closing and signing of Notes 1 and 2. He explained the Notes and referred to the "12% coupon" as "pretty rich" and stated it was "an awfully sweet deal." Pl.'s Ex. 85. He sent a recap of the like-kind exchange and projection of the value of the portfolio in five years. Pl.'s Ex. 86. And finally, he emailed on July 31, 2009, sending a quarterly report and inquiring about Dole's decision regarding Note 2. Pl.'s Ex. 104. He stated: "We have raised all of the capital we need as of last week, and as a result

will have to withdraw our offer to you by the 15th of August. See you in the Fall." Id. Dole emailed Brandt and Adams on October 26, 2009, inquiring about visiting the properties, Pl.'s Ex. 202, but he did not return to Texas thereafter.

At some point in late 2010 or early 2011, DIS Partners began experiencing problems and fell behind on payments to investors and creditors. See Trial Tr. vol. 3, 180:18-181:12. On June 22, 2011, Texas Capital Bank provided Dole notice his loan was in default. Def.'s Ex. B-15. ONEprop, LLC, a property management firm both DIS Partners and Dole contacted, provided a market analysis of Dole's properties dated July 11, 2011, Pl.'s Ex. 709, and a property report dated July 26, Pl.'s Ex. 707. On July 29, in a letter to Jacob Carroll, Dole gave DIS Partners written notice of default under the MLA and requested DIS Partners cure deficiencies. Pl.'s Ex. 407; Trial Tr. vol. 2, 148:12-152:8. The MLA's termination provision provided that if, after notice and a thirty-day opportunity to cure, DIS Partners had not cured the breach, Dole could terminate the lease for cause and take over management of the properties. Pl.'s Ex. 502 ¶ 18. He followed up in an August 19 letter, and noted he obtained a postponement of the default date of Texas Capital Bank to September 6, 2011. Pl.'s Ex. 408. The bank foreclosed on the properties on November 1, 2011. See Trial Tr. vol. 2, 157:6-13; Compl. ¶ 19. At the time of the foreclosure, Dole owned assets over $4,000,000 and had access to $25,000 in credit. Trial. Tr. vol. 3, 12:21-13:16.

At trial, Dole offered testimony from David Kadleck, CEO of ONEprop, LLC, a Texas real estate company specializing in the leasing and management of single-family homes, and proffered him as an expert witness. Kadleck testified DIS Partners contacted ONEprop in June 2010, regarding 160 vacant properties in Houston and ONEprop agreed to consider taking over management of the properties. Trial Tr. vol. 3, 46:7-20. Dole contacted Kadleck in May 2011, regarding his options for his properties. Id. 72:18-24.

Dole also offered testimony from Michael Keller, a certified public accountant and partner at Gallaher, Flynn & Company, and proffered him as an expert witness. Keller testified DIS Partners had a loss of approximately $1.3 million in 2009, and that it had a negative net equity position of over $2.2 million in both May and June of 2009. Trial Tr. vol. 1 (Doc. 110) 172:25-173:20 (Sept. 22, 2015).

Dole asserts a claim based upon fraud and misrepresentation, Compl. ¶¶ 20-22. He alleges losses over $4,000,000, id. ¶ 22, and seeks a judgment exceeding $1,000,000 in damages, id. at 12. Following trial, Dole asserts Adams is liable for the following misrepresentations: (1) stating Dole would be investing in single-family homes fully renovated to like-new condition; (2) stating Dole's property values would increase when valued as rental and the properties had high appreciation potential; and (3) providing a projection about Dole's portfolio in July 2009 and stating DIS Partners' historic average occupancy and rent increase. (Doc. 117 at 21-24 ¶¶ 1, 3, 6.) Dole also asserts Adams is liable for fraud for (1) failing to revise or correct his representations about the properties being "fully rehabbed;" (2) failing to correct his statements regarding occupancy rates of DIS Partners' properties when those rates changed; and (3) failing to inform Dole that DIS Partners was experiencing financial difficulties in 2009. Id. at 22-23 ¶¶ 2, 4, 5.

## III. Discussion

The parties agree the proper standard of proof is clear and convincing evidence. This standard is a "very demanding" measure of proof:

> Although something less than proof beyond a reasonable doubt, it is substantially more rigorous than the mere preponderance standard usually applied in the civil context, and is generally said to require proof that the existence of the contested fact is "highly probable" rather than merely more probable than not.

Woolaver v. Vermont, 833 A.2d 849, 854 (Vt. 2003) (quoting In re N.H., 724 A.2d 467, 469-70

(Vt. 1998)). A district court's findings of fact entered after a bench trial are reviewed for clear error. Harding v. Naseman, 377 F. App'x 48, 49 (2d Cir. 2010) (citation omitted).

Plaintiff must prove each of the five elements of fraud: (1) intentional misrepresentation of a material fact; (2) known to be false when made; (3) not open to the defrauded party's knowledge; (4) the defrauded party acts in reliance on that fact; and (5) harm. Estate of Alden v. Dee, 35 A.3d 950, 960-61 (Vt. 2011). Fraud can be accomplished affirmatively by false statements or by concealment of facts by one who knows of and has a duty to disclose those facts. Id. at 961; see also White v. Pepin, 561 A.2d 94, 96 (Vt. 1989) (noting under Vermont law, fraud must "consist of some affirmative act, or of concealment of facts by one with knowledge and a duty to disclose"). A misrepresentation may be made with actual knowledge of its falsity or recklessly without actual knowledge as to its truth, i.e., with reckless indifference. Follo v. Florindo, 970 A.2d 1230, 1241 (Vt. 2009); Bennington Hous. Auth. v. Bush, 933 A.2d 207, 211 (Vt. 2007). Reckless indifference is shown where a speaker does not have the confidence in the accuracy of his representation that he states or implies or knows he does not have the basis for his representation that he states or implies. Follo, 970 A.2d at 1241. A duty to disclose arises from a special relationship of confidence or trust, such as a fiduciary relationship. Dee, 35 A.3d at 961. A failure to prove any one element prevents the party from prevailing.

Dole asserts Adams is liable for fraud for misrepresenting DIS Partners' occupancy rates in 2009 and for providing a false projection about Dole's portfolio. (Doc. 117 at 23-24 ¶¶ 4, 6.) He argues the projection "perpetuated [Adams] fraudulent statements" and induced him to make an additional $100,000 investment in DIS Partners. Id. Adams described the additional investment as a "sweet deal." Pl.'s Ex. 85. Generally, statements of opinion are not actionable as fraud. Howard Opera House Assocs. v. Urban Outfitters, Inc., 166 F. Supp. 2d 917, 926 (D. Vt. 2001) (applying Vermont law). The Court finds Adams' statement regarding Note 2 was one of opinion and

therefore cannot form the basis for a fraud action. Dole asserts Adams is liable for fraud because he failed to correct his representation that DIS Partners' occupancy rate was 94% when the rate dropped at least 7% by June 30, 2009, after Dole purchased the properties and signed the MLAs. (Doc. 117 at 23 ¶ 4.) In an August 29, 2008 letter to Dole, Adams stated: "Currently our [DIS Partners] entire portfolio is at 94% occupancy." Pl.'s Ex. 3. The letter also stated DIS Partners manages the properties under MLAs as a merged pool "which reduces the impact of vacancies on any one investor's pool." Id. DIS Partners' June 30, 2009 occupancy rate was 86.97%. Pl.'s Ex. 313. Under the MLA, Dole was to receive a set amount of rent per month regardless of the occupancy rate of his particular properties, or of DIS Partners' properties as a whole. To be material, a representation must "affect the essence of the transaction." Silva v. Stevens, 589 A.2d 852, 857 (Vt. 1991). Dole has not established by clear and convincing evidence that a drop in DIS Partners' occupancy rates to 87% was material because the occupancy rate had no bearing on the amount of rent he was to receive under the MLA. Accordingly, Dole's allegation that Adams' failure to correct his August 2008 statement prior to the June 2009 closing was fraudulent fails.

Dole asserts Adams is liable for fraud for stating Dole's property values would increase by 10-15% when valued as rental properties as opposed to owner-occupied single-family homes and the properties had high appreciation potential. (Doc. 117 at 22-23 ¶ 3; Pl.'s Ex. 46.) The Court finds the specific projection of future increase in value and statement regarding general appreciation potential were statements of opinion and expressed judgment as to future value. Such statements cannot form the basis of a fraud claim. See Howard Opera House, 166 F. Supp. 2d at 926-27 (citing Restatement (Second) of Torts § 538A (1977)) (expression of judgment as to quality, value, authenticity, or other matters of judgment is representation of opinion). Accordingly, this allegation of fraud fails.

Dole asserts Adams is liable for fraud by stating Dole would be investing in single-family homes fully renovated to like-new condition and not correcting the representation when he knew in June 2009 that Dole's portfolio would include multi-unit properties. (Doc. 117 at 21-22 ¶ 1.) Regarding the representation Dole would be investing in single-family homes fully renovated to like-new condition, Dole concedes "Adams may have believed this to be the case when he made the representation[] to Dole in 2008." Id. Accordingly, because Dole has not demonstrated by clear and convincing evidence it was known to be false when made, this representation cannot be the basis of fraud. The remainder of this fraud allegation fails because he has not demonstrated it was not open to Dole's knowledge that the portfolio of properties DIS Partners was offering included multi-unit properties. The Lockwood and Lavender properties had sale prices of $430,000 and $225,000, respectively. The next highest purchase price was $118,000. The purchase prices alone were sufficient to put Dole on notice those properties were different than the others. When asked directly by his counsel at trial whether he understood he was getting any multi-unit properties, Dole stated: "That's a hard question to answer. I'm sure that I read it, but what was in my mind was the single-family houses that I was looking at, and I honestly didn't spend much time thinking about multi-family houses." Trial Tr. vol. 2, 47:22-48:2. Dole had the property addresses of the Lockwood and Lavender multi-unit properties at least as early as May 18, 2009, Pl.'s Ex. 35, and, while DIS Partners had not yet provided appraisals, Dole could have made inquiries of public records regarding the properties. The Court finds Dole has failed to carry his burden to demonstrate by clear and convincing evidence Adams' failure to tell Dole in June 2009 his portfolio of properties would include multi-unit properties was fraud.

Dole asserts Adams is liable for fraud because he failed to inform Dole that DIS Partners was experiencing financial difficulties in 2009 and would be using Dole's investment to offset past-due property tax payments on other properties. (Doc. 117 at 23 ¶ 5.) Accordingly, the Court must

find Adams had knowledge and a duty to disclose these allegedly material facts. Dole was corresponding with Adams because Dole's broker, arguably a fiduciary, who received a commission of approximately $100,000 from Dole, abdicated the position between Dole--his investor--and DIS Partners--the company offering the investment the broker presented to Dole. Dole has not demonstrated Adams was acting as a fiduciary. Assuming Adams had the knowledge, Dole has failed to demonstrate by clear and convincing evidence he had a duty to disclose to Dole information regarding DIS Partners' finances in 2009. See Dee, 35 A.3d at 961. Accordingly, this allegation of fraud fails.

Dole asserts Adams is liable for fraud because he failed to revise or correct his representations about the properties being "fully rehabbed." (Doc. 117 at 22 ¶ 2.) Dole concedes Adams may have believed his representations that Dole would purchase properties "renovated to 'as new' condition" to be true when he stated it in August 2008, see Pl.'s Ex. 3, but asserts many of the properties he purchased were not renovated and, though Adams had access to information to determine whether or not the properties DIS sold to Dole were renovated, Adams never revised or corrected his representations about the properties being "fully rehabbed." (Doc. 117 at 22 ¶ 2.) Dole has not demonstrated by clear and convincing evidence Adams had knowledge and a duty to disclose this allegedly material fact. As noted above, Adams was not a fiduciary. Even if Adams did have a duty to investigate and disclose this fact, Dole has not demonstrated by clear and convincing evidence Adams intended to mislead or defraud Dole. See White v. Pepin, 561 A.2d 94, 96 (Vt. 1989) ("Where [a] duty [to disclose] is present, the failure to disclose a material fact, coupled with an intention to mislead or defraud rises to the level of material misrepresentation."). Further, Dole cannot show the information was not open to his knowledge or that he justifiably relied on Adams' August 2008 general statement regarding DIS Partners offering renovated properties once he was informed in May 2009 of specific properties he would purchase, see Pl.'s Ex. 35. Indeed,

Dole wrote to Adams that he was concerned about a few of the houses chosen for his portfolio because he did not think they were representative of what he had been shown when he visited in March. Pl.'s Ex. 45. At that point, the truth or falsity of the representation was within Dole's reach: before making a million dollar investment, Dole could have traveled to Texas again to view the particular properties he would be purchasing or asked his broker to investigate. Accordingly, this allegation of fraud fails.

Given the totality of the evidence presented at trial, Dole has failed to carry his burden of proving by clear and convincing evidence Adams committed fraud under Vermont law.

IV. Conclusion

Having found the facts described in this opinion, and given the conclusions of law that followed, see Fed. R. Civ. P. 52(a)(1), this Court determines Plaintiff has failed to sustain his very demanding burden of proof to show that William Adams committed fraud. Accordingly, the Court finds in favor of the Defendant as to each of Plaintiff's claims. The Clerk shall enter judgment on behalf of the Defendant consistent with the Court's findings of fact and conclusions of law.

Additionally, Dole's motion to continue his objection to testimony and admission of exhibits related to mitigation of damages (Doc. 116), and Adams' motion for judgment on partial findings (Doc. 104) are denied as moot.

SO ORDERED.

Dated at Brattleboro, in the District of Vermont, this 29th day of January, 2016.

/s/ J. Garvan Murtha
Honorable J. Garvan Murtha
United States District Judge